```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER ENGLAND                      CIVIL ACTION

VERSUS                                   NO: 16-3184

ADMINISTRATORS OF THE TULANE             SECTION: "J" (2)
EDUCATIONAL FUND
```

**ORDER AND REASONS**

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 29)** filed by Defendant, The Administrators of the Tulane Educational Fund d/b/a Tulane University ("Tulane"). Plaintiff, Christopher England, filed an opposition to the motion, (Rec. Doc. 33,) and Tulane filed a reply. (Rec. Doc. 35.) Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED.**

**FACTS AND PROCEDURAL BACKGROUND**

This litigation arises from Plaintiff's employment as a writing tutor with Tulane's A.B. Freeman School of Business ("Business School") from the fall of 2013 through the fall of 2014. As a writing tutor, Plaintiff earned $19 an hour for a pre-determined number of hours per semester. According to Plaintiff, Tulane defined a full-time work week as thirty-seven and one-half hours per seven days. Therefore, Plaintiff claims that Tulane's own rules require it to provide employees overtime pay for any hours exceeding thirty-seven and one-half in a given work week.

1

On April 14, 2016, Plaintiff filed suit alleging that Tulane failed to pay him "overtime" under the Fair Labor and Standards Act ("FLSA") and failed to pay him certain benefits under the Louisiana Wage Payment statute.[1] Tulane filed a motion to dismiss pursuant to Rule 12(b)(6) on June 20, 2016, alleging that Plaintiff's complaint failed to state a claim under the FLSA. On July 19, 2016, this Court granted that motion and ordered Plaintiff to file an amended complaint within 21 days or the Court would dismiss his claims with prejudice. (Rec. Doc. 6 at 14.) Plaintiff filed an amended complaint on August 9, 2016. (Rec. Doc. 7.) In response, Tulane filed another motion to dismiss pursuant to Rule 12(b)(6), which the Court granted in part and denied in part on November 3, 2016. (Rec. Doc. 13.) Specifically, the Court dismissed with prejudice all of Plaintiff's claims for "overtime" hours worked in excess of thirty-seven and one-half hours but less than forty per week. The Court also dismissed without prejudice Plaintiff's claims for retirement plan contributions and health insurance.

Tulane filed a motion for summary judgment on July 3, 2017 arguing for the dismissal of Plaintiffs claims under the FLSA and any state law claims. (Rec. Doc. 29.) Plaintiff filed an opposition

---

[1] La. Rev. Stat. § 23:631, *et seq.*

2

to the motion on July 19, 2017, (Rec. Doc. 33,) and Tulane filed a reply. (Rec. Doc. 35.) The motions are before the Court on the briefs and without oral argument.

## **PARTIES' ARGUMENTS**

Tulane argues that the Court should grant summary judgment because there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Specifically, Tulane argues that Plaintiff was an exempt employee under the FLSA's teaching exemption, and therefore, is not entitled to overtime pay. Tulane also argues that Plaintiff's state law claims should be dismissed because Plaintiff was not eligible for benefits during his employment with Tulane according to its policies and practices.

Plaintiff does not oppose Tulane's Motion for Summary Judgment on the issue of unpaid overtime under the FLSA. However, Plaintiff argues that genuine issues of material fact exist as to whether Plaintiff should have been paid vacation and holiday pay benefits under Louisiana law. Plaintiff argues that his employment was continuous and that he was eligible for vacation after six months of employment. Plaintiff also argues that although he was designated as a regular part-time employee, he was actually a full-time employee due to the number of hours he worked per week and was therefore eligible for benefits.

**LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ. Proc. 56(c)). The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues. *Id.* Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute. *Id.* "A factual dispute is 'genuine' where a reasonable jury could return a verdict for the non-moving party. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted). The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. [The courts] *do not, however, in*

4

*the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."* Little, 37 F.3d at 1075 (emphasis in original) (citations omitted).

## DISCUSSION

**(A) FLSA Claims**

Tulane argues that Plaintiff was an exempt employee under the FLSA's teaching exemption and therefore not entitled to unpaid overtime. The FLSA requires that employers pay their employees at a rate of at least one and one-half times their regular rate for the hours an employee works in excess of a forty-hour workweek. 29 U.S.C. § 207(a)(1). However, employers do not have to pay time-and-a-half to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The term "employee employed in a bona fide professional capacity" includes any employee "with a primary duty of teaching, tutoring, instructing, or lecturing in the activity of imparting knowledge" and who is employed by an "educational establishment." 29 C.F.R. § 541.303(a).

Plaintiff does not dispute that his primary job duties, which included teaching, tutoring, and instructing, qualify him an exempt employee, nor does he dispute that Tulane is an "institution of higher education" for purposes of coverage under the FLSA. Furthermore, it appears to the Court that Tulane's motion on these

5

claims has merit. Accordingly, Plaintiff's claims under the FLSA are dismissed with prejudice.

**(B) Supplemental Jurisdiction**

Plaintiff notes in his opposition that his only federal claim is for unpaid overtime under the FLSA. (Rec. Doc. 33 at 1.) Having dismissed Plaintiff's FLSA claim, the Court considers whether to exercise supplemental jurisdiction over Plaintiff's Louisiana law claims. A district court may decline to exercise supplemental jurisdiction if:

1. the claim raises a novel or complex issue of State law,
2. the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
3. the district court has dismissed all claims over which it has original jurisdiction, or
4. in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Court must also balance the factors of judicial economy, convenience, fairness, and comity. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir. 2002). The "general rule" is to decline to exercise jurisdiction when all federal claims are dismissed or otherwise eliminated from a case prior to trial; however, this rule is neither mandatory nor absolute. *Id*. at 446-47. The Court has "wide discretion in determining whether to retain supplemental jurisdiction over a state law claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (9th Cir. 1993).

Although the Court has dismissed all of Plaintiff's FLSA claims that initially gave the Court original jurisdiction, the Court exercises its "wide discretion" to retain supplemental jurisdiction over the remaining state law claims. These claims raise neither complex nor novel issues and the Court finds no exceptional circumstances for declining jurisdiction. The factors of judicial economy, convenience, fairness, and comity also weigh in favor of retaining supplemental jurisdiction. This litigation has been pending for well over a year and trial is set to commence in less than a month. The Court has issued orders on two dispositive motions and is familiar with the specifics of this matter. (Rec. Docs. 6, 13.) Moreover, while both parties recognize that the Court may decline to exercise supplemental jurisdiction, neither party has articulated any reason as to why the Court should not exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the Court finds that it is appropriate to exercise supplemental jurisdiction over Plaintiff's remaining Louisiana law claims.

**(C)   State Law Claims under Louisiana's Wage Payment Statute**

The Louisiana Wage Payment statute requires employers to pay their employees "the amount then due under the terms of employment" upon the employee's discharge. La. Rev. Stat. § 23:631(A)(1)(a). The language "is unambiguously broad in scope; it mandates that an employer pay any amount that an employee justifiably earns under

7

the terms of his employment." *Tillman v. Louisiana Children's Med. Ctr.*, 16-14291, 2017 WL 1399619, at *3 (E.D. La. Apr. 19, 2017) (citing *Kidder v. Statewide Transp., Inc.*, 13-594 (La. App. 3 Cir. 12/18/2013), 129 So. 3d 875, 881). Thus, the issue before the Court is whether Plaintiff is entitled to any benefits under the terms of his employment as a writing tutor.

Plaintiff argues that he was entitled to vacation pay and holiday pay under the terms of his employment.[2] Tulane argues that it has presented uncontroverted evidence that Tulane has discretion to determine employment categories and that writing tutors were not categorized as a "benefits eligible" position.

During the time of Plaintiff's employment, Tulane's Staff Handbook stated that eligibility to participate in Tulane's benefit program depended on a position's employment category. The Handbook further stated that a position has to be categorized as "regular full-time" or "regular part-time with benefits" to be eligible for benefits, "unless eligibility is otherwise required by federal or state law." (Rec. Doc. 29-3 at 135.) Tulane's Director of Compensation and Records, Cheryl Bush, states in her

---

[2] Plaintiff initially claimed that his position as a writing tutor entitled him to benefits in the form of vacation, paid time off, sick days, and paid holidays as "unpaid wages" under Louisiana law. Tulane argues that only accrued vacation can possibly constitute "unpaid wages" upon termination within the meaning of Louisiana's Wage Payment statute. Plaintiff in his opposition concedes this in part by claiming only vacation pay and holiday pay are due under the terms of his employment with Tulane. (Rec. Doc. 33 at 1.)  The Court assumes *arguendo* that holiday pay constitutes "unpaid wages" under Louisiana Wage Payment statute.

8

declaration that the designation of these categories was within Tulane's sole discretion. (Rec. Doc. 29-3 at 27.) A particular position's employment category was determined by, *inter alia*, the number of consecutive months that employees were expected to work. *Id*. During Plaintiff's employment, Tulane's practice was to designate job positions expected to work at least seven consecutive months out of the school year as "regular part-time with benefits." *Id*.

Plaintiff argues that he was eligible for benefits because his employment was continuous. (Rec. Doc. 33 at 2.) Plaintiff, however, did not submit any evidence to support his broad conclusion. Tulane has demonstrated that the position of writing tutor was designated as "regular part-time without benefits" due in part to the fact that the tutors were hired for one semester at a time, which is a period less than seven consecutive months. *Id*. Cheryl Bush states that writing tutors were hired for a particular semester depending on the class sizes. *Id*. Finally, if tutors were hired for two consecutive semesters, they were not employed for the time period between the semesters when there were no classes. *Id*.

Plaintiff also contends that he was a full-time employee based on the number of hours that he worked per semester, and therefore,

9

he was eligible for benefits.[3] (Rec. Doc. 33 at 2, 3.) Assuming that the number of hours per week worked is true, Plaintiff has failed to present any evidence that his position was designated as "regular full-time" or "regular part-time with benefits" and thus benefits eligible. Tulane has presented evidence that the number of hours an employee works did not determine whether they were eligible for benefits.[4] In fact, Tulane has demonstrated that the number of hours that a writing tutor worked was irrelevant. For example, Plaintiff was hired for a pre-determined amount of compensation before the start of each semester based on the particular class sizes. (Rec. Doc. 29-4 at 1, 79.) Plaintiff was also not expected to keep track of his hours, and he received full compensation irrespective of the amount of hours that he actually worked. (Rec. Doc. 29-3 at 27; Rec. Doc. 29-4 at 1.) Furthermore, Plaintiff admits in his deposition that he was not promised benefits during his employment. (Rec. Doc. 29-3 at 19.)

---

[3] Plaintiff claims that in the fall semester of 2013, he was engaged to work 694 hours at $19 per hour which required Plaintiff to work over 43 hours per week. In the spring semester of 2014, Plaintiff claims he was engaged to work 646 hours at $19 per hour which required Plaintiff to work at least 38 hours per week. For summer session 1 in 2014, Plaintiff was engaged to work 192 hours at $19 per hour which required him to work 38 hours per week. For summer session 2 in 2014, Plaintiff was engaged to work 300 hours at $19 per hour which required him to work 60 hours per week.

[4] Cheryl Bush states in her declaration, "It was Tulane's practice to provide these benefits eligible designations (i.e., regular full time" or "regular part time with benefits") to staff employees who, among other criteria, were to be employed for a period of at least seven (7) consecutive months." (Rec. Doc. 29-3 at 28.)

Finally, Plaintiff argues that vacation accrual starts on the date of hire, that it is eligible for use after the completion of six months employment, and that paid holiday is available as of the date of hire.  Plaintiff has correctly pointed out the dates of availability and use for these benefits, however, Plaintiff has not presented any evidence that he was designated by Tulane as "benefits eligible." Tulane has demonstrated that it designated positions in its sole discretion as "benefits eligible" or "not benefits eligible" based on, among other criteria, the number of consecutive months that a certain position was scheduled to work. Plaintiff's position as a writing tutor was designated as "regular part-time," but not with benefits. (Rec. Doc. 29-3 at 28.)

Tulane has presented a properly supported motion. The Court finds there is no genuine issue of material fact as to whether Plaintiff was eligible for benefits under the terms of his employment with Tulane.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Tulane's *Motion for Summary Judgment* **(Rec. Doc. 29)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's FLSA claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's state law claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 17th day of August, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE